```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
TWO'S COMPANY, INC.,                                         :
                                                             :
                         Plaintiff,                          :    13-cv-3338-NSR
v.                                                           :
                                                             :    OPINION AND ORDER
JANE HUDSON, AND JOHN DOES 1-5,                              :
                                                             :
                         Defendants.                         :
-------------------------------------------------------------X
```

NELSON S. ROMÁN, United States District Judge.

Two's Company, Inc. ("Plaintiff") brings this action against Defendant alleging trademark infringement and Lanham Act claims. Before the Court is Defendant Jane Hudson's ("Defendant") motion to dismiss this case under Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and for a transfer of this matter to the District of South Carolina. For the following reasons, Defendant's motion is DENIED.

## I. Background

Plaintiff is a New York company that is located in Elmsford, New York and is engaged in the business of developing, manufacturing, and selling giftware and home goods products. Roberta Gottlieb Declaration ("Gotlieb Dec.") ¶¶ 2-5. Defendant is the owner and founder of Two's Company Needlepoint, located in Fort Mill, South Carolina, where Defendant is also a resident of Fort Mill, South Carolina. Hudson Decl. ("Hudson Dec.") ¶¶ 1-2. Defendant has used the name "Two's Company" since 1977 and the name "Two's Company Needlepoint" since the launch of her website in 2002. *Id* at ¶ 2. Defendant has four employees at her store in South Carolina, none of whom have ever worked or lived in New York. *Id* at ¶ 10.

1

In 1992, Plaintiff obtained a trademark, TWO'S COMPANY INC., Trademark Registration Number 1768609.  Compl. ¶9(a). The '609 trademark is for goods including hand embroidered and needlepoint pillows and jewelry boxes not made of metal, hand embroidered and needle pointed fabric household boxes for holding tissues and storing hats, and hand embroidered and needlepointed stuffed animal toy animals. *Id* & Compl. Ex. 2. In 2001, Plaintiff obtained a second Trademark Registration number for jewelry. *Id* at ¶ 9(b), Ex. 3. Plaintiff also claims that it is the owner of common law rights to the TWO'S COMPANY trademark for many more goods not specifically listed in the trademark registrations. Compl. ¶¶ 8-11. Plaintiff has at least 6 employees willing to testify regarding the trademark and products produced by Two's Company. Gottlieb Dec. ¶¶ 6, 8-12. Plaintiff states that all of these employees work at the company's headquarters in Elmsford, New York and live in close proximity to the headquarters. *Id*.

Defendant established the website for her company in 2002 under the domain name "twoscompanyneedlepoint.com." Hudson Decl. ¶ 3. The website contains a description of the company, pictures and prices for the products sold, and a purchase order form. Hudson Decl. ¶ 3-4. Visitors to the website who are interested in purchasing merchandise must complete the purchase order online and provide contact information. *Id* at ¶ 4. Ms. Hudson or another employee will then contact the customer by telephone to complete the transaction. Id. The customer provides credit card information over the phone. *Id*. Additionally, the defendant likes to discuss requests with the customers directly because many of the items Defendant sells are made to order. *Id*.

Defendant asserts that neither she nor her business: (1) owns any facilities or property in New York; (2) leases any offices or other rental facility in New York; (3) have any affiliated

2

companies or subsidiaries in New York; (4) has any bank accounts or telephone listings in New York; or (5) is registered or licensed to do business in New York. *Id* at ¶¶ 11-15. From 2010 through 2012, Defendant made eighteen sales into the State of New York: eight in 2012, five in 2011, and five in 2010. *Id* at ¶ 6. The total amount of the sales was $1721.45, which comprised approximately 0.4% of Defendant's sales for that period. *Id*.

Plaintiff commenced this lawsuit on May 17, 2013, making claims for trademark infringement, unfair competition, and false designation of origin under 15 U.S.C. 1125(a) and common law infringement and unfair competition. Compl. ¶¶ 22-32. In its Complaint, Plaintiff states that the court has personal jurisdiction over Defendant because of her "acts and omissions which have taken place in the State of New York, . . . [she] continuously and systematically conduct[ed], transact[ed], and solicit[ed] business in this district, and/or . . . the events giving rise to this Complaint occurred in this state and or had the effects in the State of New York." Compl. ¶ 7.

## II. Discussion

The burden is on Plaintiff to show the existence of jurisdiction over Defendant in the face of the present motion to dismiss for lack of personal jurisdiction. *Whitaker v. Am. Telecasting Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). "Where . . . a district court in adjudicating a motion pursuant to Federal Rule of Civil Procedure 12(b)(2) 'relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction.'" *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). A prima facie showing may be made through the plaintiff's "own affidavits and supporting materials, containing an averment of facts that, if credited, would

3

suffice to establish jurisdiction over the defendant." *Whitaker*, 261 F.3d at 208 (internal quotation marks, citation, and alterations omitted). The showing that a plaintiff must make changes with the procedural posture of the case. *Marine Midland Bank NA v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). Where, as here, no discovery has taken place, "a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). At this point, the pleadings and any other materials considered by the Court are construed in the light most favorable to Plaintiff and any ambiguities are resolved in Plaintiff's favor. [cite].

To determine whether personal jurisdiction exists over Defendant, the Court must look first to New York's long-arm statute. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010); *see also Marvel Characters v. Kirby*, 726 F.3d 119, 129 ("Because this is 'a federal question case where a defendant resides outside the forum state, . . . [and the relevant] federal statute does not specifically provide for national service of process,' . . . we apply 'the forum state's personal jurisdiction rules.'" (quoting *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)). New York's long arm statute provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state . . .; or 3. commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. . . .

N.Y. C.P.L.R. § 302(a). "If, but only if," *Best Van Lines*, 490 F.3d at 242, the court finds that the New York long-arm statute confers jurisdiction, the court then turns to whether the exercise of

4

jurisdiction comports with the due process requirements of the Fourteenth Amendment. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

### III.     New York's Exercise of Jurisdiction

Defendant concedes that New York's long-arm statute, N.Y. C.P.L.R. § 302, confers jurisdiction over defendant based on her sales of goods into the state. Def. Mot. 8. Nonetheless, the issue warrants discussion.

N.Y. C.P.L.R. § 302(a), in relevant part, confers jurisdiction as follows: "[A] court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state[.]" N.Y. C.P.L.R. § 302(a)(1). Under this section of the statute, Courts must engage in a two-step process to "decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines*, 490 F.3d at 246 (citing *Deutsche Bank Sec., Inc. v. Montana Bd. Of Invs.*, 850 N.E.2d 1140, 1142 (2006)). The New York long-arm statute is a "single act" statute, meaning that a single act may confer jurisdiction where the cause of action arises out of that act. *See, e.g.*, *Chloé*, 616 F.3d at 170 ("courts have explained that section 302 is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." (citation and internal quotation omitted)); *M. Shanken Communications, Inc. v. Cigar500.com*, No. 07 Civ. 7371(JGK), 2008 WL 2696168 at *4 (S.D.N.Y. Jul. 7, 2008) ("The courts consider a range of "purposeful activity," and even a single transaction of business is sufficient to give rise to personal jurisdiction under CPLR § 302(a)(1), if the claim arises out of the transaction.");

*Citigroup Inc. v. City Holding*, 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000) ("A single transaction of business is sufficient to give rise to jurisdiction under CPLR § 302(a)(1), even where the defendant never enters the state, if the claim arises out of the transaction.").

"[T]he second clause of section 302(a)(1) provides for jurisdiction where the defendant has only 'minimal contacts' with New York but contracts to deliver goods or services to the state." *Chloé*, 616 F.3d at 169-170. "Applying this standard, district courts in this circuit have concluded that the 'single act' of selling counterfeit goods into New York satisfies the long-arm statute under section 302(a)(1)." *Id* at 170.

Defendant sold merchandise to New York residents, and therefore falls within the purview of the second clause of section 302(a)(1). Defendant admits that she contracted to, and did, sell goods to customers in New York over a three year period from 2010 through 2012. Hudson Decl. ¶ 7. She entered into eighteen transactions with customers from New York amounting to total sales of $1,721.45. *Id* at ¶ 6. Since the defendant admits selling merchandise in New York and receiving payment therefrom, Defendant falls within the purview of New York's long arm statute. *See Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc.*, 923 F.Supp. 433, 436 (S.D.N.Y. 1996) (the court found that where defendants admitted to shipping allegedly infringing products into New York, "those shipments were purposeful and substantially related to plaintiffs' claim of trademark infringement" and therefore N.Y. C.P.L.R. § 302(a)(1) conferred personal jurisdiction over the defendants.).

The Second Circuit in *Chloé* did not decide the question of whether the "single act of shipping a counterfeit Chloé bag" was sufficient to confer personal jurisdiction because the defendant operated a "highly interactive" website where bags were offered for sale to New York consumers. *Chloé*, 616 F.3d at 170. Where personal jurisdiction is derived from internet contacts,

courts have sometimes viewed the facts with respect to a "sliding scale of interactivity [of the website]." *Best Van Lines*, 490 F.3d at 252; *see also Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa. 1997) (first proposing the idea of the sliding scale of interactivity). The Second Circuit has noted that a website's interactivity may be useful for analyzing personal jurisdiction, "but only insofar as it helps to decide whether the defendant . . . purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *Best Van Lines*, 490 F.3d at 252 (internal quotation marks and citations omitted).

On one end of the scale are websites that are entirely "passive" and in such cases, courts generally refuse to extend jurisdiction on the basis of the website alone. *See, e.g.*, *Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, 2008 WL 1700196, at *6 (S.D.N.Y. Apr. 4, 2008) ("Internet websites that are not of a commercial nature and do not permit the purchase of products on-line are not sufficient to confer personal jurisdiction pursuant to section 302(a)(1)."); Aqua Prods., Inc. v. Smartpool, Inc., No. 04 Civ. 5492, 2005 WL 1994013, at *5 (S.D.N.Y. Aug. 18, 2005) ("Passive websites which primarily make information available to viewers, but do not permit an exchange of information, [do not] justify the exercise of specific jurisdiction over a non-domiciliary."). On the other end are websites that are fully interactive, such as in *Chloé*, where consumers can access the site from anywhere and purchase products. Such websites are commercial and courts will generally confer jurisdiction over the defendant based on the website. *See, e.g.*, *Energy Brands, Inc. v. Spiritual Brands, Inc.*, 07 Civ. 10644(DC), 2008 WL 2747276, at *7–8 (S.D.N.Y. July 16, 2008) (court exercised jurisdiction based on online purchases of twenty-nine orders of bottled water to New York through interactive website); *Alpha Int'l, Inc. v. T–Reproductions, Inc.*, 02 Civ. 9586, 2003 WL 21511957, at *3 (S.D.N.Y. July 1, 2003)

("Websites that permit information exchange between the defendant and viewers are deemed 'interactive,' and generally support a finding of personal jurisdiction over the defendant."); *Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002) ("If [defendant] wishes to operate an interactive website accessible in New York, there is no inequity in subjecting [defendant] to personal jurisdiction here. If [defendant] does not want its website to subject it to personal jurisdiction here, it is free to set up a passive website that does not enable [defendant] to transact business in New York."); *Hsin Ten Enterprise USA, Inc. v. Clark Enterprises*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.").

In this case, Defendant's website falls somewhere in the middle. Defendant's website allows customers to fill out a purchase order form online, indicating the product or products the consumer wishes to purchase. Defendant or one of her employees will then reach out to that person to fulfill the order, receiving credit card information over the phone, and then ship the order. "Creating a site, like placing a product into the stream of commerce, may be felt nationwide—or even worldwide—but, without more, it is not an act purposefully directed toward the forum state." *Bensusan Rest. Corp. v. King*, 937 F.Supp. 295, 301 (S.D.N.Y. 1996). That "something more" in this case is the shipping of products from Defendant to consumers in New York. The combination of the semi-interactive website which allows out-of-state consumers to commence a purchase through the website and the actual sale of products to New York on several occasions satisfies the "transacting business" prong of New York's long-arm statute.

### IV.   Federal Due Process

In New York, the long-arm statute does not provide that "jurisdiction will be permitted to the full extent allowed by the federal Constitution," and therefore, Federal courts sitting in New

York must make "two separate inquiries: one statutory and one constitutional." *Best Van Lines*, 490 F.2d at 244. Under the two-prong test established in *International Shoe*, it must be established that the defendant has (1) minimal contacts with the forum state, and (2) the exercise of jurisdiction is reasonable in that it does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (internal citation omitted).

### 1. Minimal Contacts

The court must determine that the defendant has sufficient minimum contacts with the forum state to justify the exercise of jurisdiction over the defendant. *See Int'l Shoe*, 326 U.S. at 316. In determining whether the defendant has minimal contacts with the forum state, the Supreme Court has held that a "distinction is made between 'specific' jurisdiction and 'general' jurisdiction." *Chloé*, 616 F.3d at 164. General jurisdiction can be exercised when the defendant engages in regular business and maintains general contacts with the forum state. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414-15 & n. 9 (1984)). Specific jurisdiction may be exercised when the defendant maintains sufficient contacts with the forum state and the cause of action arises out of those contacts. *Id.*

#### a. General Jurisdiction

"[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state'" are subject to the general jurisdiction of the courts of that state. *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)). If a party has "continuous and systematic" contacts with another state, a court has the power to adjudicate a case over that defendant, even where the subject matter of the suit is not related to the defendant's contacts with the state. *Helicopteros*, 466 U.S. at 414-16.

Here, Defendant's contacts with New York cannot be said to be "continuous and systemic" such that the court is justified in exercising general jurisdiction over the Defendant. Defendant does not live in New York, her business does not have operations in New York, and she does not travel to New York to conduct business. Her conduct does not raise to the level of being continuous or systemic and therefore, the court does not have general jurisdiction over Defendant.[1]

### b. Specific Jurisdiction

"Where the claim arises out of, or relates to, the defendant's contacts with the forum—i.e., specific jurisdiction [is asserted]—minimum contacts [necessary to support such jurisdiction] exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Licci ex rel Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013) (internal quotation marks omitted). For purposes of asserting specific jurisdiction, the court must take into consideration the "quality and nature" of the defendant's contacts with the forum state. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Best Van Lines*, 490 F.3d at 242 ("A court deciding whether it has jurisdiction over a nonresident defendant under the Due Process Clause must evaluate the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test." (internal quotations marks and citations omitted)). Specific jurisdiction may only be exercised where the "litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id* at 472 (quoting *Helicopteros*, 466 U.S. at 414).

---

[1] Plaintiff's argument that the presence of Defendant's twin sister in New York is enough to subject Defendant to the general jurisdiction of New York courts is specious, at best. There is no indication that Defendant's sister is actively engaged in Defendant's business. On Defendant's website, there is a link to an account created by her sister to display photographs of certain products. This is the only clear connection between Defendant's sister and the business. This is not enough to establish "continuous or systemic" contacts with this forum.

The "purposeful availment" requirement ensures that a defendant will not be haled into an out-of-state jurisdiction based on "random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475. "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id* at 476. The critical determination is whether the defendant has "purposefully availed itself of the privilege of conducting activities within the forum State," so that he or she may reasonably foresee being "haled into court there." *Id* at 475 (quoting *Hanson v. Deckla*, 357 U.S. 235, 253 (1958)).

As stated above, Defendant made sales of her products into the State of New York in such a way that she availed herself of the privileges of doing business within the state. Although Defendant states that her contacts were minimal and her sales few, on at least twelve occasions she sent her products to New York consumers. "In actually sending items to New York, there can be no doubt that [the defendant's] conduct was 'purposefully directed toward the forum State.'" *Chloé*, 616 F.3d at 171 (quoting *Asahi*, 480 U.S. at 112). Further, as already discussed, in trademark infringement cases, "courts have found that an offering for sale of even one copy of an infringing product in New York, even if no sale results, is sufficient to vest a court with jurisdiction over the alleged infringer." *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295, 299 (S.D.N.Y.1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997). Therefore, Defendant's activities cannot be said to be so "random, fortuitous, or attenuated" that the Court may not properly exercise jurisdiction.

  **2. Reasonableness**

In determining the reasonableness of the exercise of jurisdiction over a defendant, the court looks to five factors. The court must consider "the burden on the defendant, the interests of the forum State, . . . the plaintiff's interest in obtaining relief[,] . . . 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987) (citing *World-Wide Volkswagen Corp. v. Woodward*, 444 U.S. 286, 292 (1980)). "While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Chloé*, 616 F.3d at 165 (quoting *Burger King*, 471 U.S. at 477).

With regard to the first factor, the Court understands that litigating this case in New York is going to be a burden on Defendant and Defendant's business. However, "[e]ven if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002). As to the second factor, New York has a "manifest interest in providing effective means of redress for its residents." *Chloé*, 616 F.3d at 173 (quoting *Burger King*, 471 U.S. at 483). Defendant claims that there has been no harm alleged to anyone other than Plaintiff, . [cite]. Third, Plaintiff has an interest in obtaining relief in this forum because Plaintiff is a citizen of this forum. Just as the first factor weighs in Defendant's favor, this factor weighs in Plaintiff's favor, neutralizing both of them.

In assessing the fourth factor, "courts generally consider where witnesses and evidence are likely to be located." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996). As Defendant states that she and all of her employees are located in South Carolina, it is likely that any Defense witnesses are located there. Plaintiff lists six employees who are likely witnesses who are located in New York. The same is likely of any relevant evidence in this case. This factor, therefore, is neutral. Finally, Defendant has espoused no compelling policy argument as to why the exercise of jurisdiction over Defendant would be unreasonable.

Since Plaintiff has made the threshold showing that there are minimum contacts, Defendant must provide a "compelling case" that the exercise of jurisdiction by this Court would be unreasonable. Defendant has not met her burden here. Therefore, the Court finds that the exercise of personal jurisdiction over the Defendant does not violation the Due Process Clause of the Fourteenth Amendment.

## V.     Transfer

When venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Minette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993).

The burden is on the moving party to prove that the case should be transferred to another district. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). In fact, the standard to be applied is one of "clear and convincing evidence . . . in determining whether to exercise discretion to grant a transfer motion." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 133-14 (2d Cir. 2010). Defendant's argument to transfer venue is one sentence that

states, "[A] requirement that Ms. Hudson defend herself in the Southern District of New York, particularly when all of the information and employees of Ms. Hudson are in South Carolina, also favors transfer to the District of South Carolina." Def. Mot. in Supp. 21.

Under 28 U.S.C. § 1404(a), "For the convenience of the parties and the witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).   The purpose of section 1404 is "to prevent waste of time, energy and money and to protect litigants, witnesses and [the] public against unnecessary inconvenience and expense." *Beatie v. Osbourn LLP v. Patriotic Scientific Corp.*, 431 F. Supp. 2d 367, 394 (S.D.N.Y. 2006) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)) (internal quotations omitted).  District courts are given wide discretion in deciding whether to transfer a case and must evaluate the convenience and efficiency factors on a case-by-case basis. *See Am. Steamship Owners Mut. Protection and Indem. Ass'n, Inc., v. LaFarge North America, Inc.*, 474 F. Supp. 2d 474 (S.D.N.Y. 2007); *see also D.H. Blair & Co., Inc., v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

When deciding motions to transfer, the court may consider a number of factors: "(1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Am Steamship Owners*, 474 F. Supp. 2d at 480 (S.D.N.Y. 2007). "There is no rigid formula for balancing these factors and no single one of them is determinative" in what is "essentially an equitable task left to the Court's discretion." *Citigroup, Inc.*, 97 F. Supp. 2d at 561

(internal quotations and citation omitted). Further, Plaintiff's "choice of forum is presumptively entitled to substantial deference . . . [which] presumption is even stronger where the chosen forum is also the plaintiff's home." *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009).

Defendant has failed to show, by "clear and convincing evidence," that this case should be transferred. As noted above, the location of witnesses, the parties, and documents or other evidence is neutral in this case. Neither party has expressed that there will be non-party witnesses that need the Court's power to compel their attendance. While it seems that Plaintiff may be of more means relative to Defendant, Defendant has not made any showing that this factor should compel the court to transfer the case. Finally, Plaintiff's choice of forum must be accorded some weight. Based on the totality of circumstances, and the lack of a sufficient argument from Defendant to convince the Court that this case should be transferred, the Court declines to transfer this case to the District of South Carolina.

## VI. Conclusion

Accordingly, the Court DENIES Defendant's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). The Clerk of Court is respectfully directed to terminate the motion. Docket No. 15. Defendant is directed to answer the Complaint within 30 days of this Order.

Dated: March 6th, 2014
White Plains, New York

SO ORDERED:

_____ 3/6/14
NELSON S. ROMÁN
United States District Judge